**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROBERT HUGHES,                      )
                                    )
                    Petitioner,     )      C.A. No. 10-203 Erie
                                    )
        v.                          )
                                    )      Magistrate Judge Maureen P. Kelly
RAYMOND J. SOBINA, et al.,          )
                                    )
                    Respondents.    )


## OPINION

Robert Hughes ("Petitioner"), is a state prisoner currently incarcerated at the State

Correctional Institution in Albion, Pennsylvania ("SCI-Albion").   He has filed a Petition Under

28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), in

which he claims that the Board of Probation and Parole (the "Board") improperly rescinded his

parole.   Petitioner seeks an order from this Court reinstating his rescinded parole and for this

Court to determine his release date.   ECF No. 8 at 15.   Because Petitioner fails to show that the

state courts' adjudication of his ex post facto claims was contrary to or an unreasonable

application of then existing United States Supreme Court precedent, or constituted an

unreasonable determination of the facts, and because he fails to show a violation of his

substantive due process rights, the Petition will be dismissed.

## I.   FACTUAL AND PROCEDURAL HISTORY

Petitioner is a frequent litigator in both federal and state courts.[1]   Three of the many

cases he has filed are related to the instant Petition: 1) Hughes v. Sobina, No. 08-165E, 2009 WL

---

[1]      A review of PACER reveals that Petitioner has filed eight civil actions in the United States
(footnote continued. . .)

1597813 (W.D.Pa. June 5, 2009) (habeas petition attacking delay in parole); Hughes v. Pa. Bd. Of Probation and Parole et al., No. 372 M.D. 2009 (Pa. Cmmw. Ct.)(petition for review concerning the Board's action in rescinding Petitioner's parole, which rescission is at issue in this case); and Hughes v. Pa. Bd. Of Probation and Parole et al., No. 24 WAP 2009 (Pa.) (which affirmed the Commonwealth Court order denying Petitioner's petition for review in No. 372 M.D. 2009).    The significance of these cases to the instant Petition will be made clear in the review of the history of this case.

On July 19, 1983, Petitioner was sentenced by the Court of Common Pleas of Philadelphia County to a term of imprisonment of 16 to 45 years on convictions of robbery and carrying a firearm in public.   His minimum sentence date expired on March 26, 1999, and his maximum sentence date originally was set to expire on March 26, 2028.[2]

In January 2001, the Board granted Petitioner parole to a Community Corrections Center ("CCC").   His parole commenced on or around April 2, 2001.     In September 2001, Petitioner absconded from parole when he left the CCC and failed to return.   Less than a month later, he was recaptured and the Board recommitted him as a technical parole violator and it also recalculated his maximum sentence date from March 26, 2028, to April 20, 2028 to account for

---

District Courts located within the Commonwealth of Pennsylvania and two actions in the United States Court of Appeals for the Third Circuit.   A review of the electronic state court dockets reveals that Petitioner filed at least two appeals in the Pennsylvania Superior Court, i.e., Nos. 1124 WDA 2006 and No. 65 WDM 2006 and six petitions for review in the Commonwealth Court, i.e., Nos. 641 MD 2010; 594 MD 2009; 372 MD 2009; 188 MD 2008; 364 MD 2006; and 116 MD 1995.   Petitioner has filed two actions in the Pennsylvania Supreme Court, i.e., Nos. 24 WAP 2009; and 690 MAL 2006.   The state court appellate dockets are available at: http://ujsportal.pacourts.us/DocketSheets/Appellate.aspx

[2]   Many of the following facts are taken from the Memorandum Opinion in Hughes v. Sobina,
(footnote continued. . .)

the time he was delinquent while on parole.   Petitioner has never been released on parole again since his recommitment as a technical parole violator.

Several years later, on December 10, 2007, the Board did issue a grant of re-parole to Petitioner to a CCC with the special condition that he receive mental health treatment at the CCC.   In accordance with the Board's decision, on January 11, 2008, a Board employee submitted a request to the DOC to place Petitioner in a CCC with mental health treatment.   In response, on January 30, 2008, Leslie S. Hatcher, ("Hatcher") Regional Director of the CCCs in Region 1, sent a memorandum to the SCI-Albion Parole Office in which she advised that February 19, 2008, had been established as the parole-release date for Petitioner, and that he was to be released to DRC, Dual Diagnosis, a CCC in Philadelphia.

On February 14, 2008, just days before Petitioner was to be paroled to the CCC, the Parole Office at SCI-Albion postponed his release date because the Institutional Parole Agent assigned to SCI-Albion, named Mr. Weber, had discovered an error in the paperwork (specifically, Petitioner's Sentence Status Summary Sheet) that had been previously submitted to the Board.   Weber sent a memorandum to the Board on March 11, 2008, explaining the error and requesting that the Board review the corrected paperwork so that SCI-Albion could release Petitioner to parole.   Weber explained the error was that the second offense listed on Petitioner's Sentence Status Summary sheet was incorrectly listed as Theft instead of Robbery.

On February 14, 2008, Petitioner's Sentence Status Summary Sheet was revised to accurately reflect his convictions.   On February 19, 2008, Petitioner filed a grievance, concerning the failure to release him to parole on February 19, 2008, in which he claimed that

---

No. 08-165E, 2009 WL 1597813 (W.D.Pa. June 5, 2009).

SCI-Albion's Parole Office was retaliating against him.   On March 4, 2008, Unit Manager Jim Bentley denied the grievance, explaining that the delay was caused by the error in the Sentence Status Summary Sheet.

On March 5, 2008, Petitioner filed a petition for writ of mandamus in the Commonwealth Court of Pennsylvania in which he contended that SCI-Albion's Parole Office had violated his due process rights by refusing to carry out the Board's order to release him on parole.   On May 7, 2008, the Commonwealth Court issued a per curiam order dismissing the case.   The Commonwealth Court recognized that a parolee has a vested liberty interest in the limited liberty offered by parole and that parole cannot be taken away without affording the parolee minimal due process guarantees of prior notice and an opportunity to be heard.   However, the Commonwealth Court held that there was no due process violation in Petitioner's case because he had not acquired the limited interest in the liberty offered by parole since his parole had not yet been executed.   It concluded that Petitioner was merely attacking a discretionary decision that was not subject to judicial review.   Petitioner did not appeal the decision of the Commonwealth Court.

Next, on April 30, 2008, the Board reaffirmed its decision of December 10, 2007, in which it had granted Petitioner re-parole.   As directed by the Board, Weber submitted a new request to the DOC to place Petitioner in a CCC with mental health treatment on May 7, 2008.

On May 29, 2008, Petitioner filed a petition for writ of habeas corpus, attacking the delay in his re-parole as being retaliatory.   Hughes v. Sobina, No. 08-165E (W.D.Pa. ECF. No. 1) ("the 2008 Petition").

On June 6, 2008, Hatcher advised SCI-Albion's Parole Office that October 28, 2008, had been established as Petitioner's new parole release date, and that he was to be released to Gaudenzia First, a CCC in Philadelphia.   Weber explained that Petitioner's placement in a CCC took longer than the usual placement because he requires placement in at a facility with a dual-diagnosis program that treats both the issues of mental health and chemical addiction, and CCCs providing these services were then over capacity, which resulted in a significant placement delay.

Petitioner was not released to parole on October 28, 2008.   This is because on September 29, 2008, Governor Edward G. Rendell asked the Board and the DOC to implement a parole moratorium and immediately suspend the release of all prisoners who had previously been recommended for parole pending the findings of an independent review by a committee lead by Professor John S. Goldkamp of Temple University (the "Goldkamp Committee").   The issuance of the moratorium was in response to the murders of two Philadelphia police officers by paroled offenders.   The Board and the DOC complied with the Governor's request and immediately issued a moratorium on all pending grants of parole.   Because of the institution of this moratorium, Petitioner's parole-release date of October 28, 2008 was cancelled.

On October 20, 2008, Governor Rendell requested that the Board and the DOC lift the parole moratorium for non-violent offenders.   Since Petitioner had been convicted of robberies, which were considered violent offenses, the lifting of the moratorium did not apply to Petitioner and his grant of parole remained suspended.

On December 1, 2008, the Board and the DOC ended its moratorium on unexecuted grants of parole and began processing violent offenders, such as Petitioner, for release in

conformity with the interim recommendations made by the Goldkamp Committee.   In

processing these unexecuted grants of parole, the Goldkamp Committee's interim

recommendations included dividing violent offenders, such as Petitioner, into two groups based

on potential public safety risk.   Further, the Goldkamp Committee recommended placing high

risk, violent offenders into specialized CCCs with violence prevention programming that have

on-site parole agents who are trained to work with violent offenders.

By a decision rendered January 9, 2009, the Board modified its original grant of

Petitioner's parole of December 10, 2007, to now grant him parole but require that once

Petitioner completed mental health treatment in a mental health CCC, he was then to be sent to a

to a specialized CCC with violence prevention programming.   Subsequently, the Board

reconsidered its January 9, 2009, order and decided to grant Petitioner parole just to a CCC with

mental health treatment.

On March 16, 2009, the SCI-Albion Parole Office issued a notice to Petitioner that he has

a "new bed date" of June 30, 2009, at Gaudenzia First.   ECF No. 33 (the "March 16, 2009

Notice").   In the March 16, 2009 Notice, Petitioner was also informed that "You must complete

your violence prevention group."   Id.   Petitioner received that notice on March 18, 2009.   Id.

Apparently, Petitioner objected to being required to completing the violence prevention group.

Hughes v. Sobina, No. 1:08-cv-165 (W.D.Pa. ECF No. 25 at 2, 5).

Respondents, in response to the 2008 Petition, informed the Court that Petitioner would

be released to parole at a CCC as soon as there is space available for him at the facility.   Id.,

(ECF No. 22, Response to Petitioner's Motion For Speedy Remedy And Evidentiary Hearing at 5,

n.5).   Petitioner then informed the Court that the SCI-Albion Parole Office had notified him that

6

he was scheduled to be released to parole on June 30, 2009, and that he would be released to Gaudenzia First.

Magistrate Judge Baxter then issued her ruling in <u>Hughes v. Sobina</u>, No. 08-165E, 2009 WL 1597813 (W.D.Pa. June 5, 2009), finding that Petitioner had failed to sustain his burden to show that the delays in Petitioner's parole release were retaliatory.   Accordingly, the 2008 Petition was dismissed.   Petitioner did not appeal.

Coincidentally, on the same date as Magistrate Judge Baxter entered her order denying the 2008 Petition, the Board issued an order rescinding the Board's previous decisions of January 14, 2009, April 30, 2008 and December 10, 2007, which had granted Petitioner re-parole.   The Board did so "DUE TO [HUGHES'] REFUSAL TO PARTICIPATE IN STIPULATED PROGRAMMING." ECF No. 20-1 at 45.   The Board's reference to programming apparently meant the violence prevention group which the SCI-Albion Parole Office informed Petitioner of via the March 16, 2009 Notice.   <u>See</u> ECF No. 32 at 5 to 6.

Petitioner challenged the decision of the Board by filing a Petition for Review in the Nature of Mandamus with the Commonwealth Court on July 9, 2009.   <u>Hughes v. Pa. Board of Probation and Parole</u>, No. 372 MD. 2009 (Pa. Cmmw. Ct.).   Petitioner then filed an Amended Petition for Review on or about July 28, 2009.   The Respondents filed Preliminary Objections. Petitioner filed an Answer to the Preliminary Objections.   On August 26, 2009, the Commonwealth Court issued its decision, sustaining the Preliminary Objections and dismissing Petitioner's Petition for Review.   ECF No. 20-1 at 54 to 55.   The Commonwealth Court held that a potential parolee has no right to parole until the parole is actually executed under state law and since Petitioner's parole was not actually executed, the Board had total discretion on whether

to go forward with Petitioner's parole and a petition for mandamus cannot be used to compel a discretionary act.   Id.   The Commonwealth Court also held that there was no ex post facto violation because Petitioner did not demonstrate that the Board's actions have actually or potentially increased Petitioner's punishment.   Id.

Thereafter, on September 10, 2009, Petitioner filed an appeal from the Commonwealth Court to the Pennsylvania Supreme Court.   Hughes v. Pa. Board of Probation and Parole, No. 24 WAP 2009 (Pa).   On April 29, 2010, the Pennsylvania Supreme Court in a one line per curiam order affirmed the Commonwealth Court's order.   ECF No. 20-1 at 60.

On August 19, 2010, Petitioner initiated the instant proceedings in this Court by the filing of a Motion to Proceed In Forma Pauperis.[3]   ECF No. 1.   The Petition was filed on September 21, 2010.   ECF No. 8.   The Respondents filed their Answer.   ECF No. 20.   Petitioner filed a Traverse and Brief in Support of the Petition.   ECF No. 24.   The case was subsequently reassigned to the undersigned.   ECF No. 26.

The parties have all consented to have the Magistrate Judge exercise plenary jurisdiction. ECF Nos. 2, 23, 25.

---

[3]   Before initiating proceedings in this Court, Petitioner had filed in the United States Court of Appeals for the Third Circuit, a motion for leave to file the instant Petition, ECF No. 1-4, fearing that the instant Petition would be second or successive in relation to the 2008 Petition.   ECF No. 1-3 (docket sheet for In re Hughes, No. 10-3154 (3d Cir.)).   The Court of Appeals denied as unnecessary Petitioner's Motion for leave to file the instant Petition because the instant Petition does not meet the definition of second or successive.   ECF No. 1-6.

## II.  DISCUSSION

The Petition is not a model of clarity as to the specific claims raised by Petitioner.

Petitioner clarified his claims in his Supplemental Brief, ECF No. 29, wherein he listed his

claims as follows:

1. Petitioner[']s reparole was arbitrarily rescinded for failure to complete a program which Respondent acknowledges had in fact been "previously completed."
2. Petitioner[']s reparole was arbitrarily rescinded for failure to complete a program which Respondent told Petitioner, "He need not complete"!
3. Petitioner[']s reparole was arbitrarily rescinded for failure to complete a program, which according to the program's stated criteria (Prof. Goldkamp) , "did not apply" to Petitioner, inter alia, a current violent offense or one committed within the past ten years (Petitioner[']s offense – 1982).
4. The new parole policy recommended by Prof. Goldkamp was given retrospective application to Petitioner[']s previously granted reparole in violation of the ex post facto clause of the U.S. Constitution.
5. The State Court's determination of facts, central to Petitioner's claims were both erroneous and unreasonable, inter alia, (a) Petitioner did "not" state a right to parole, but instead, stated a due process right which prohibits arbitrary government actions in the parole context and (b) the retroactive application of Prof. Goldkamp's new parole policy to Petitioner[']s previously granted parole was "not" merely a change in halfway house criteria as articulated by the State courts in their per curiam denial of Petitioner[']s ex post fact claim, because, Petitioner was never released to the Halfway House.

ECF No. 29 at 1 to 2.

Essentially, in the first three claims, Petitioner asserts that the Board violated his

substantive due process rights, i.e., acted arbitrarily in rescinding his parole.   See, e.g., ECF No.

29 at 4 (referencing "substantive due process").   In Claims 4 and 5, Petitioner asserts that his ex

post facto rights were violated.

### A.   SUBSTANTIVE DUE PROCESS CLAIMS

The standard for analyzing a substantive due process claim appears to depend upon

whether one is challenging legislative or executive action.   See, e.g., Evans v. Secretary, Pa.

Dept. of Corrections, 645 F.3d 650, 659 (3d Cir. 2011), *cert. den.* 132 S.Ct. 349 (2011); Wagner ex rel. Wagner-Garay v. Fort Wayne Community Schools, 255 F.Supp.2d 915, 922 (N.D. Ind. 2003) ("However, the appropriate standard for analyzing a substantive due process claim depends on whether 'legislation or a specific act of a governmental officer is at issue.'") (quoting Dunn v. Fairfield Community High School Dist. # 225, 158 F.3d 962, 965 (7th Cir. 1998)).   The parole board is an executive branch agency.   See Goodman v. McVey, 428 F.App'x 125, 126 (3d Cir. 2011).   The standard of review for a substantive due process challenge to executive branch action requires that the aggrieved person establish that the executive action shocks the court's conscience.   See, e.g., id.; Evans, 645 F.3d at 659.   See also Benson v. Martin, 8 F.App'x 927, 930 (10th Cir. 2001) (explaining it is a habeas petitioner's burden to establish that the challenged action shocks the conscience).   Therefore, the standard of review of the Board's actions in considering the Petition at issue is the "shock the conscience" test.

Admittedly, the "shock the conscience" test is less than precise.   However, in giving content to this test, the Supreme Court has explained that conduct that is "most likely to rise to the conscience-shocking level is 'conduct intended to injure in some way unjustifiable by any government interest.'"   Chavez v. Martinez, 538 U.S. 760, 775 (2003) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)).

In the instant case, Petitioner fails to show that the Board's reasons for rescinding his parole are conscience shocking or that such reasons constitute behavior that is intended to injure Petitioner in a way that is unjustifiable by any government interest.   The reason given, i.e., failure to complete programming, appears to further a legitimate government interest.   See, e.g., Ledwith v. Brooks, No. Civ.A. 06-611, 2007 WL 804189 (W.D.Pa., March 14, 2007).

Progress by the parole applicant in the process of rehabilitation is a legitimate consideration for the Board and so the Board's rescission of parole to Petitioner based upon its opinion that Petitioner needs to participate in and complete additional institutional programs in order to further his rehabilitation is not conscience shocking.   See McGinnis v. Royster, 410 U.S. 263, 277 (1973)(it is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and his rehabilitative progress before he is eligible for parole").

### 1.   Petitioner Complains That He Already Completed All Necessary Programming.

What of Petitioner's argument though that the Board was requiring him to complete programs that he previously completed?   We are unconvinced.

The Notice of Board Decision recorded on December 10, 2007, which granted Petitioner re-parole noted as one of the reasons given for granting parole was Petitioner's "PARTICIPATION IN AND COMPLETION OF PRESCRIBED INSTITUTIONAL [i.e. Department of Corrections] PROGRAMS."   ECF No. 20-1 at 35.[4]

The Board then issued a Notice of Decision recorded January 9, 2009, wherein it modified the Board's December 10, 2007 Decision so as to require Petitioner to not only go to a CCC with Mental Health Treatment for a Minimum of 3 months, but to require in addition, that Petitioner upon completion of the CCC with Mental Health Treatment also go to a "SPECIALIZED CCC WITH VIOLENCE PREVENTION PROGRAMMING."   ECF No. 20-1

---

[4]   The Notice of Board Decision dated April 30, 2008, was simply a technical correction to correct an error in the December 10, 2007 Board Decision, which erroneously listed Petitioner's Parole Violator Maximum date as 4/20/2008" when it should have been "4/20/2028."   ECF No.

(footnote continued. . .)

at 41.   Not more than five days later, the Board recorded a Notice of Decision on January 14, 2009 which rescinded the Board Action recorded on January 9, 2009, which effectively did away with the requirement that Petitioner go to a specialized CCC with violence prevention programming.

The Board's next Notice of Official Decision was recorded on June 5, 2009 and therein, the Board rescinded Petitioner's grant of re-parole due to Petitioner's "REFUSAL TO PARTICIPATE IN STIPULATED PROGRAMMING. AND NOW LIST FOR REVIEW ON NEXT AVAILABLE DOCKET."   ECF No. 20-1.

Although the Notice of Official Decision recorded on June 5, 2009 did not explicitly mention the March 16, 2009 Notice, it is apparent from the record that the Board's action in rescinding Petitioner's parole was based on his refusal to participate in the violence prevention group offered at SCI-Albion by the DOC as indicated in the March 16, 2009 Notice.   ECF No. 33 at 5.

The question before this Court is whether it is arbitrary and capricious to require Petitioner to attend and complete the violence prevention group offered at SCI-Albion.   Simply requiring a prisoner who has been convicted of violent crimes to undergo a violence prevention program is not arbitrary and capricious.   It patently serves a legitimate penological goal of rehabilitation.

However, Petitioner argues that "the rescission of Petitioner's re-parole for failure to complete a retro-active parole policy which had 'already been completed'" was arbitrary and capricious.   ECF No. 24-1 at 3.   We are not persuaded.   The analysis of the Court in Walls v.

---

20-1 at 39.

<u>Attorney General of Pa.</u>, No. 06-1598, 2007 WL 4190790 (W.D.Pa. Nov. 26, 2007) is applicable

in this case.

Even if Petitioner had completed the sex offenders program, it would still not violate Petitioner's substantive due process rights for the Board to conclude, in the exercise of its discretion, that Petitioner could benefit from repeating the treatment program because in its estimation, Petitioner needs to repeat the program in order to be a safer risk should he be released on parole. *See Banks v. Pennsylvania Bd. of Probation and Parole*, 2004 WL 906296, at *4 (E.D.Pa. April 28, 2004) ("[T]he Board's decision that Petitioner may require continued participation in a prescriptive program does not constitute an arbitrary or capricious decision."). Even if the Board is erroneous in this conclusion, such would not violate any of Petitioner's rights. *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) ("The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect ... decisions"), *overruling on other grounds as recognized in, Whims v. Harbaugh*, 139 F.3d 897 (4th Cir.1998) (Table, Text in Westlaw); *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994) (applying rule v of *Bishop. Wood* in a prisoner case); *Palmigiano v. Mullen*, 491 F.2d 978, 980 (1ˢᵗ Cir.1974) ("There is no federally-protected right to a particular classification nor even to an error-free decision by the state authorities. 'The Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state.' ") (*quoting Snowden v. Hughes*, 321 U.S. 1, 15, 64 S.Ct. 397, 88 L.Ed. 497 (1944) (Frankfurter, J., concurring)); *Tansy v. Mondragon*, 52 F.3d 338 (Table), 1995 WL 216926, *5 (10th Cir. 1995) ("Even assuming that some of the allegations against Mr. Tansy were inaccurate, this does not establish a factual dispute as to whether he was deprived of substantive due process."). That the Respondents committed a factual error in the course of their determining whether Petitioner should be paroled, (assuming that they did, in fact, commit an error) simply does not shock this court's conscience. That this is the case should not be surprising. If it does not offend the constitution that an innocent person is erroneously convicted of a crime, and made to suffer imprisonment, and, the Supreme Court has determined that it does not so offend, FN5 then a fortiori, that a convicted prisoner is "erroneously" denied parole and made to continue to serve his lawful sentence, does not violate the constitution merely because the determination is erroneous. Accordingly, Petitioner has failed to carry his burden to show that the Board violated his substantive due process rights in denying him parole by requiring him to complete further sexual offenders treatment programming.

-------------------------------------

FN5. *See Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) ("Claims of actual innocence based on newly discovered evidence have

never been held to state a ground for federal habeas relief."). *See also id*. at 404
("a claim of 'actual innocence' is not itself a constitutional claim").

Id., at *5.   Hence, even if Petitioner previously completed a violence prevention group as he

asserts, contrary to the evidence of record, ECF No. 33, that the Board required him to complete

the program again is within the Board's discretion and does not shock the conscience.[5]

## 2.   Petitioner Complains That The Board Already Told Him He Need Not Complete Any More Programming.

Next we consider Petitioner's claim that the rescission of his parole violated his

substantive due process rights when the Board told him previously that he need not complete

such a violence prevention group.   ECF No. 24-1 at 3.   It is true that in its December 10, 2007

Decision granting Petitioner parole, the Board stated that among the factors considered was

Petitioner's "completion of programs."   ECF No. 20-1 at 35.   Unlike Petitioner, we do not read

this statement to mean that the Board determined he did not ever need to complete another

violence prevention program.   Moreover, the rescission of Petitioner's parole occurred in June

2009, more than one and a half years after the December 10, 2007 decision granting Petitioner

parole.   During the interim circumstances changed.   The changes included: the fact that there

was the shooting of two police officers by parolees; the Governor then requested a moratorium

on the grant of paroles pending recommendations from the Goldkamp Committee; the heightened

concern for violent prisoners and their potential impact on the community should they be

---

[5]   It appears from the record before the Court that Petitioner wants to be released on parole.
However, he has continued to refuse to comply with the directives of the SCI-Albion Parole
Office.   Completion of directed requirements is essential for Petitioner or any other prisoner to
achieve release on parole.

released on parole; and an attempt to better predict their potential for violence and to better control or prevent such re-occurrence of violence.   Hence, in the time between the Board granted Petitioner re-parole in December 2007 and the time when the Board via its parole officer at SCI-Albion required Petitioner to undergo violence prevention group in March 2009, much had changed.   In light of these changes, the fact that the Board required Petitioner to undergo more programming in March 2009, programming which the Board did not deem he needed to undergo in December 2007, simply does not shock the court's conscience and is not arbitrary and capricious but serves the legitimate penological interest in heightened scrutiny of prisoners convicted of violent offenses.   And this is so, notwithstanding that Petitioner was granted parole back in December 2007 under the then extant "heightened" standard for violent offenders, ECF No. 24-1 at 11, because thereafter, a slightly different regime came into existence, which in the judgment of the Board and/or the Board's Agent at SCI-Albion[6] counseled that Petitioner undergo the violence prevention group.   Hence, this argument does not afford Petitioner relief.[7]

---

[6]   Thus we reject Petitioner's contention that only the Board itself through the issuance of a formal Board Decision could require Petitioner to undergo more programming and that the Board could not act through its Agent at SCI-Albion to require Petitioner to undergo more programming.   ECF No. 24-1 at 15.   Furthermore, as explained in the body of the opinion, the Board's January 14, 2009 decision which gave as one of its reasons for re-paroling Petitioner the fact that he completed programming did not "waive" (see id.) or estop the Board from requiring more and different programing if in their opinion Petitioner required further programming.   Id.

[7]   Petitioner argues that under Pennsylvania state law, rescission of parole requires new and significant adverse information.   ECF No. 29 at 8.   Assuming without deciding that Petitioner's characterization of state law is accurate, we reject his contention that there was not new and significant adverse information.   The new and significant adverse information was that the Board informed Petitioner via the March 13, 2009 Memo that he was required to participate in violence prevention group but Petitioner refused to do so.   Based on his failure to do so, the Board rescinded its grant of re-parole.   This is sufficient new and adverse information occurring since the grant of Petitioner's re-parole in 2007 so as to justify rescission.   At the very least, no

(footnote continued. . .)

### 3.   Petitioner Complains That The Policy Which Required More Programming Did Not Apply To Him.

Petitioner contends that the requirement by the Board that he undergo the violence prevention group was an impermissible application of new guidelines that did not apply to him. There are at least two problems with Petitioner's argument.   First, Petitioner is incorrect as a factual matter.   Secondly, even if correct, it would not be sufficient to carry his burden to show a substantive due process violation by merely showing that an incorrect policy was applied to him without also showing that the application of such a policy served no legitimate penological interest.

Petitioner argues that the Goldkamp Committee's policy recommendations do not apply to him because 1) Petitioner's "current offense", which he defines as his technical parole rule violation (i.e., his absconding from the CCC, when he was first released on parole) is not violent and 2) his violent offense was not committed within the past 10 years as required under the Goldkamp Committee's recommendations.   Petitioner is wrong on both accounts.

We take judicial notice of the interim report titled "Restoring Parole and Related Processing for Categories of Violent State Prisoners:   Findings and Recommendations II", dated December 1, 2008 ("the Interim Report").[8]  The Interim Report provides a grid for determining

---

federal constitutional principle is offended by such rescission.   As explained in the text of this opinion accompanying this footnote, substantive due process is not violated by such rescission. As explained below such rescission did not violate the ex post facto clause.

[8]   The Interim Report dated December 1, 2008, which would have been published at the time of the Board's June 5, 2009 rescission of Petitioner's re-parole, is available at:

http://www.pbpp.state.pa.us/portal/server.pt/community/reports_and_publications/5358/specialized_reports_and_articles/518497

(footnote continued. . .)

the application of which protocols apply to which prisoners.   Interim Report at p. 8.   Included in

this grid is the category of "Violent Instant Offense."   It is clear from the Interim Report that the

"Violent Instant Offense" refers to the offense for which the prisoner is ultimately incarcerated

for and not to what parole violation may have resulted in the revocation of the offender's parole,

resulting in the offender's re-incarceration, which is what Petitioner contends the definition is.

Thus, Petitioner has failed to show that the policy does not apply to him because in fact, his

convictions for Robbery qualify as a "Violent Instant Offense" and his technical parole violation

is irrelevant to the definition of the "Violent Instant Offense."

The Interim Report also explains the categories for determining violent offenders further

under a Title heading "Key for Violent Offender Classification" (hereinafter "the Key").   Interim

Report at p. 9.   The Key explains that a prisoner may have an instant violence offense but no

"prior violence history markers."   Id.   Under the Key, there is a "Note" which provides as

follows: "'Prior violence history' includes the following "marker" or criteria:   any prior history

of violent offenses convictions within the last 10 years (excluding the instant offense), a prior

conviction (or adjudication) for a violent offense at age 15 or earlier ('early onset'), and/or use of

a gun in a prior violent offense."   Thus, Petitioner's contention that the policy does not apply to

him because his convictions for robberies were obtained more than 10 years ago is unpersuasive

because it is sufficient for the robbery convictions alone to qualify Petitioner as a violent

offender since the robberies are his "instant violent offense" irrespective of when they occurred

and 2) because, by the plain language of the Interim Report, the 10 year limit applies to "prior

---

The final report of the Goldkamp Committee was not released until March 29, 2010.

history of violent offenses convictions within the last 10 years (**excluding the instant offense**)"
(emphasis added).    Hence, the instant violent offense, i.e., the offense which presently confines
the prisoner (which, in Petitioner's case are the robberies) need not have been committed within
the past ten years as Petitioner contends.

Even if however the policy, by its terms, did not apply to Petitioner as he contends, it
would not be sufficient to sustain his burden to prove a substantive due process violation by the
Board.   That the Board violated a policy by applying to Petitioner a policy that did not apply to
Petitioner by which the Board required him to attend a violence prevention group is insufficient
to state a substantive due process claim without Petitioner also showing that requiring Petitioner
to attend a violence prevention group served no legitimate penological purpose.   In other words,
if requiring Petitioner to participate in a violence prevention group serves a legitimate
penological purpose (and demonstrably it does, insofar as requiring prisoners with convictions
for violent offenses to engage in such rehabilitative programs most definitely serves such an
interest), then Petitioner cannot prove a substantive due process violation.   See, e.g., Young v.
City of St. Charles, Mo., 244 F.3d 623, 626 (8th Cir. 2001) ("After analyzing the substantive due
process claim, the district court similarly dismissed it for failing to state a claim since any alleged
evidentiary and procedural errors as pleaded involved no more than possible violations of state
law and city personnel policies and did not rise to the level of 'truly irrational' governmental
action necessary to support a substantive due process action."); DePoutot v. Raffaelly, 424 F.3d
112, 119 (1st Cir. 2005) ("Mere violations of state law, even violations resulting from bad faith,
do not necessarily amount to unconstitutional deprivations of substantive due process. Courts
regularly have required something more egregious and more extreme.") (citations omitted).

Accordingly, this argument does not afford Petitioner relief.

## B.  EX POST FACTO CLAIMS

Petitioner's ex post facto claims are enumerated as Claims Number 4 to 5 in his Supplemental Brief at ECF No. 29.   We will address these two claims together.   Because Petitioner presented to the state courts his claim that his ex post facto rights were violated by the Board's decision to rescind his parole, and because the states courts addressed this issue on the merits, AEDPA provides the proper standard of review.

### 1.  AEDPA Standards Apply.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA) which amended the standards for obtaining federal habeas relief was effective April 24, 1996.   Because Petitioner's habeas petition was filed after the effective date of AEDPA, AEDPA is applicable to this case.   Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

AEDPA prohibits habeas relief unless the Petitioner shows that the State Courts' adjudication of his federal claims constituted a decision 1) that was contrary to or an unreasonable application of United States Supreme Court precedent extant at the time of the State Courts' adjudications or 2) that made an unreasonable determination of the facts.   28 U.S.C. § 2254(d).   See also Woodford v. Visciotti, 537 U.S. 19, 25 (2002)("it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner."); Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)("a habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court"); Ward v. Sternes, 334 F.3d 696,

709 n.3 (7th Cir. 2003)("A petitioner may also attack a state court's adjudication on the grounds

that it is based 'on an unreasonable determination of the facts,' § 2254(d)(2), but such attacks are

accompanied by a rigorous burden of proof: state court factual findings are presumed to be

correct unless the petitioner rebuts the presumption with 'clear and convincing' evidence. §

2254(e)(1).").    "As the Supreme Court has made clear, AEDPA imposes a 'highly deferential

standard for evaluating state-court rulings, and demands that state-court decisions be given the

benefit of the doubt.'" Blystone v. Horn, 664 F.3d 397, 417 (3d Cir. 2011) (quoting Renico v.

Lett, __ U.S. __, 130 S.Ct. 1855, 1862, (2010) (citation and quotation marks omitted)).

### 2.  The Commonwealth Court's Decision Was Neither Contrary To, Nor An Unreasonable Application Of, United States Supreme Court Precedent.

The Commonwealth Court adjudicated Petitioner's ex post facto claims as follows:

> …upon consideration of respondent Pennsylvania Board of Probation and Parole's preliminary objection in the nature of a demurrer and petitioner's response thereto, the demurrer is sustained, and the amended petition for review is dismissed.
> A prisoner has no right to be released until the parole order is executed, *Shaw v. Pa. Bd. of Prob. & Parole*, 671 A.2d 290 (Pa. Cmwlth. 1996); *Johnson v. Pa. Bd. of Prob. & Parole*, 532 A.2d 50 (Pa. Cmwlth. 1987), and although petitioner alleges that he was granted parole, he does not allege that the parole order was executed, i.e., that he signed the acknowledgment of parole conditions and that a release order was issued. The Board has sole discretion to determine whether a prisoner should be paroled, and mandamus will not lie to compel a purely discretionary act.   *Coady v. Vaughn,* 770 A.2d 287 (Pa. 2001). The Board may in its discretion rescind an unexecuted, conditional grant of parole. *Lord v. Pa. Bd. of Prob. & Parole*, 580 A.2d 463 (Pa. Cmwlth. 1990). Petitioner has not stated a claim for violation of the ex post facto clause or demonstrated that respondent's actions have actually or potentially increased his punishment. *Cimaszewski v. Pa. Bd. of Prob. & Parole*, 868 A.2d 416 (Pa. 2005); *Loomis v. Pa. Bd. of Prob. & Parole*, 878 A.2d 963(Pa. Cmwlth. 2005).
> Although petitioner alleges that respondent retroactively applied a new policy after he was granted parole, the parole decisions in question reflect that petitioner was initially paroled to a community corrections residency with mental

20

health treatment and that subsequent modifying Board actions did not impose new conditions, but rather modified the nature of the treatment programming to be provided during the community corrections residency.

ECF No. 24 at 7 to 8.[9]

Petitioner has not carried his burden to show that the Commonwealth Court's adjudication of his ex post facto claim was contrary to or an unreasonable application of then extant United States Supreme Court precedent.   As the Unite States Court of Appeals for the Third Circuit has so succinctly explained:

> The ex post facto inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change. *See Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). To violate the Ex Post Facto Clause, a retroactive change in the law or policy must create a "sufficient risk of increasing the measure of punishment attached to the covered crimes"; a "speculative and attenuated possibility of ... increasing the measure of punishment" is not enough. *Morales*, 514 U.S. at 509, 115 S.Ct. 1597.

> In *Garner*, the Supreme Court noted that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of [the Ex Post Facto Clause]." 529 U.S. at 250, 120 S.Ct. 1362. The Court, however, acknowledged the inherent difficulty in deciding whether a retroactive change to parole policy constitutes an Ex Post Facto violation, particularly considering the discretion generally afforded to parole boards in making the ultimate parole determination. *Id.* The Court made clear that "[t]he presence of discretion does not displace the protections of the Ex Post Facto Clause" and acknowledged the "danger that legislatures might disfavor certain persons after the fact is present even in the parole context." *Id.* at 253, 120 S.Ct. 1362.

> The Court nonetheless has afforded states some measure of flexibility in making changes to their parole policy, and thus has been "careful ... not to adopt a single formula for identifying which legislative adjustments, in matters bearing on

---

[9]   While it is true that the Pennsylvania State Supreme Court affirmed the Commonwealth Court's disposition, it did so in a one–line order.   Hence, we look to the Commonwealth Court as the last reasoned decision to which we apply AEDPA's contrary to or an unreasonable application standard.   See, e.g., Blystone v. Horn, 664 F.3d 397, 417 (3d Cir. 2011)

parole, would survive an ex post facto challenge." *Id.* at 252, 120 S.Ct. 1362. Informing this flexibility is the Court's observation that

> discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

> *Id.* at 253, 120 S.Ct. 1362. Therefore, the Court cautioned that "the Ex Post Facto Clause should not be employed for 'the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures' "; *id.* at 252, 120 S.Ct. 1362 (*quoting Morales*, 514 U.S. at 508, 115 S.Ct. 1597), and that "[t]he States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Id.*

Richardson v. Pa. Bd. Of Probation and Parole, 423 F.3d 282, 287-88 (3d Cir. 2005).

The foregoing quote from Richardson makes it clear to this Court that the Commonwealth Court's disposition was not contrary to or an unreasonable application of United States Supreme Court precedent concerning Petitioner's ex post facto claim. Rather, we read the Commonwealth Court's statement that "Petitioner has not stated a claim for violation of the ex post facto clause or demonstrated that respondent's actions have actually or potentially increased his punishment[,]" simply to be a conclusion that Petitioner failed to carry his burden to show the alleged change in policy wrought by the Goldkamp Committee's Reports "create[d] a 'sufficient risk of increasing the measure of punishment attached to the covered crimes'" within the meaning of Morales, 514 U.S. at

509.[10]   Moreover, we find the Commonwealth Court's disposition of the ex post facto

claim to be eminently reasonable especially given that Petitioner cannot dispute that even

before the Goldkamp Committee published its Interim Report in December 2008, the

Board could have required Petitioner to undergo additional programming and could have

refused re-parole or rescinded re-parole for Petitioner's failure to complete such

programming.

### 3.   The Commonwealth Court's Determination Of The Facts Was Not Unreasonable.

Petitioner has not carried his burden to show that the Commonwealth Court's

disposition constituted an unreasonable determination of the facts.   Petitioner's argument

concerning this issue is not entirely clear to the Court.   Petitioner takes issue with the

Commonwealth Court's declaration that:

> Although petitioner alleges that respondent retroactively
> applied a new policy after he was granted parole, the parole
> decisions in question reflect that petitioner was initially
> paroled to a community corrections residency with mental
> health treatment and that subsequent modifying Board actions
> did not impose new conditions, but rather modified the nature
> of the treatment programming to be provided during the
> community corrections residency.

---

[10]   To the extent that Petitioner argues the Commonwealth Court's disposition is contrary to or an unreasonable application of the Court of Appeals decision in Mickens-Thomas, 355 F.3d 294 (3d Cir. 2004), we are not convinced that it is.   However, even if it were, such would not be sufficient to show entitlement to relief in habeas because Petitioner must show that the Commonwealth Court's disposition is contrary to or an unreasonable application of United States Supreme Court precedent.   Parker v. Matthews, __ U.S. __, __, 2012 WL 2076341, at *6 (June 11, 2102) ("circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' 28 U.S.C. § 2254(d)(1). It therefore cannot form the basis for habeas relief under AEDPA.").

ECF No. 24 at 8.   Petitioner takes issue with the Commonwealth Court's determination and argues that "if the Commonwealth[ Court']s conclusion is correct, then <u>why wasn't Petitioner released to the Halfway-House</u>?"   ECF No. 24-1 at 16.   We are not certain that we can follow Petitioner's logic but it appears that Petitioner is arguing that the Goldkamp Committee's Interim Report, "did in fact 'alter' the conditions for reparole and was not merely a modification of half-way house treatment based upon the fact that Petitioner was never released to the halfway house and said retrospective policy was the '<u>lone-reason</u>' for rescinding reparole."   ECF No. 24-1 at 17.

First, we would note that the Commonwealth Court's reasoning in the above quoted passage seems to be addressed to an argument that the Board's decision of January 9, 2009 which required that Petitioner undergo specialized CCC placement which had violence prevention programming was a violation of the ex post facto clause.   In this context, the Commonwealth Court's statement is simply accurate. The Board's January 9, 2009 action did not deny him parole but only required that when he was released on parole and when he finished his time in a CCC with mental health treatment, he was required to go to a CCC with violence prevention programming.   At the very least, Petitioner has not carried his burden to show that the Commonwealth Court's determination was unreasonable in this context.

In conclusion, as none of Petitioner's issues merit the grant of habeas relief, the Petition will be denied.

### C.  CERTIFICATE OF APPEALABILITY

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.   28 U.S.C. § 2253 provides

that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."   Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]"   Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).   Applying these standards to this case, jurists of reason would not find the conclusions reached herein to be debatable.   Accordingly, a certificate of appealability should be denied.

### D.  PETITIONER'S MOTION FOR DISCOVERY

In addition to his Petition and supplements thereto, Petitioner also has filed a Motion for Leave to Conduct Discovery.   ECF No. 31.   In the Court's exercise of its discretion whether to permit Petitioner to conduct discovery, the Court finds that Petitioner has failed to carry his burden to show "good cause" in order to conduct such requested discovery.   See Bracy v. Gramley, 520 U.S. 899 (1997). "Good cause" exists where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." Id. at 908-09 (internal quotation marks omitted); Lave v. Dretke, 416 F.3d 372, 381 (5th Cir. 2005) ("In order to establish good cause, the petitioner must demonstrate . . . ."); Moore v. Gibson, 195 F.3d 1152, 1168 (10th Cir. 1999) ("Petitioner, therefore, has failed to establish good cause for discovery on this issue.").   In light of the disposition we have made of the Petition, we find that Petitioner has not shown that he "may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."

### III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED, a certificate of appealability is DENIED, and the pending motion for leave to conduct discovery is DENIED.

BY THE COURT,

s/Maureen P. Kelly
MAUREEN P. KELLY
U.S. MAGISTRATE JUDGE

Dated:   August 2, 2012

cc:     ROBERT HUGHES
        AR-4652
        SCI ALBION
        10745 RT 18
        ALBION, PA 16475

        All counsel of record via ECF